1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CASE NO. CR 01-672 AHM |
|---|---|
| Plaintiff, | ) ORDER DENYING DEFENDANT'S MOTION TO TERMINATE SUPERVISED RELEASE FOR LACK OF JURISDICTION |
| v. | |
| STEPHEN JEFFREY REGEN, | |
| Defendant. | |

Defendant Stephen Jeffrey Regen ("Regen") is the subject of a petition filed by the United States Probation Office alleging that Regen has violated the conditions of his supervised release. Regen moves to dismiss the petition and terminate his supervised release on the grounds that the term of his supervision had expired before the issuance of the summons requiring him to show cause why his supervision should not be revoked.  Therefore, according to Regen, this Court lacks jurisdiction to consider the pending petition for revocation of supervision.

For the reasons set forth below, the Court concludes that it does have jurisdiction and DENIES Regen's Motion to Terminate Supervision.

## FACTS

On September 17, 2001, Regen pled guilty to a four-count indictment charging him with two counts of bankruptcy fraud, in violation of 18 U.S.C. § 152(3); one count of impersonating a federal officer or employee, in violation of 18 U.S.C. § 912; and one count of forging a judge's signature, in violation of 18 U.S.C. § 505. The indictment also cited 18 U.S.C. § 3147 and alleged that at the time Regen committed the offense described in each count, he was released under Title 18, United States Code, Chapter 207, in *United States v. Regen*, SA CR 99-92(A)-DOC.[1]

On February 1, 2002, at the hearing on Regen's sentencing, this Court committed defendant "to the custody of the Bureau of Prisons ["BOP"] to be imprisoned for a term of twelve (12) months." This Court further ordered that "[s]ix of these months are for the underlying conduct and shall be served concurrently with the [46-month] sentence imposed by Judge Carter . . . in SA CR 99-92-DOC.  A consecutive sentence of six months is for committing the offense while on pretrial supervision and shall be served consecutively . . . ." This Court further ordered that, "[u]pon release from imprisonment, the defendant shall be placed on supervised release for a term of three (3) years." Thus, Regen received a combined 52-month term of imprisonment, which  was

---

[1] At the time defendant committed the underlying crimes for which this Court sentenced him, he had pled guilty to and was awaiting sentencing on count 35 of a 60-count first superseding indictment in another case. *United States v. Ronald Henry Michel et al.,* SA CR 99-92(A)-DOC, in which five defendants were charged with mail fraud, wire fraud and money laundering. On January 7, 2002, approximately one month before this Court sentenced him, Regen was sentenced by Judge Carter in that case to a term of 46 months in the custody of the BOP, to be followed by a five-year term of supervised release.  Defendant had also pled guilty to and was awaiting sentencing on an information charging him with one count of making a false statement to a financial institution in violation of 18 U.S.C. § 1014, in *United States v. Regen*, SA CR99-92(B)-DOC.

1  deemed to have commenced when he was arrested and taken into custody on
2  July 22, 2001.
3        On May 12, 2004, the BOP transferred Regen from Federal Correctional
4  Institution Talladega, where he was then incarcerated, to Vinewood Re-Entry, a
5  community corrections center ("Vinewood"). Vinewood is under contract with
6  the BOP to operate community corrections centers on behalf of the BOP.  It
7  houses federal offenders both as a term of their incarceration and as a condition
8  of their supervised release. On November 5, 2004, Regen was released from
9  Vinewood and the custody of the BOP.  For the reasons explained below, it was
10 on this date that he commenced serving his terms of supervised release in this
11 case and in case number SA CR 99-92(A)-DOC.
12       On June 2, 2007, Regen purchased an eighth of an ounce of rock cocaine
13 for himself and a quarter ounce of rock cocaine for a friend. After purchasing
14 these narcotics, Regen drove away in his vehicle.  Los Angeles Police
15 Department officers attempted to pull him over. After a short pursuit, the
16 officers arrested him.  Regen was charged with violating Section 664-11350 of
17 the California Health & Safety Code and Section 2800.1 of the California
18 Vehicle Code (*People v. Regen*, Case No. LA 055985, filed in Los Angeles
19 Superior Court.)
20       On October 4, 2007, a United States Probation Officer presented a sworn
21 petition for revocation of Regen's supervision, based on his June 2, 2007 attempt
22 to possess rock cocaine and attempt to evade arrest. On October 12, 2007, the
23 Court issued a summons requiring Regen to show cause why his supervision
24 should not be revoked based on the allegations in the sworn
25 / / /
26
27
28

petition.[2] The issue now is whether the Court has jurisdiction to consider the petition.

## DISCUSSION

### A. The Parties' Contentions

Regen asserts that his three-year supervision period began on May 12, 2004, when the BOP transferred him from FCI Talladega to Vinewood. Relying on *United States v. Sullivan*, 504 F.3d 969 (9th Cir. 2007), Regen argues that community confinement is not incarceration or imprisonment and therefore, his three-year term of supervised release began on May 12, 2004. According to Regen, it follows that his supervised release term ended three years later, on May 11, 2007, before the cocaine purchase occurred and before the summons was issued requiring him to answer the alleged violations of supervised release.

The government argues that Regen's confinement at Vinewood was part of the sentence of imprisonment that this Court imposed, during which defendant remained under the control of the BOP. According to the government, therefore, Regen's three-year term of supervised release did not commence until November 5, 2004, when he was released to the community to be supervised by a probation officer, and did not expire until midnight on November 4, 2007. Because the summons regarding the instant petition for revocation issued on October 12, 2007, the government logically concludes that this Court does have jurisdiction to consider whether Regen violated the terms of his supervised release. *See* 18 U.S.C. § 3583(i).

### B. Analysis

#### 1. Statutory Scheme

Section 3621 of Title 18, United States Code, provides as follows:

---

[2] The government has represented that separate revocation proceedings will be initiated in case number SA CR 99-92(A)-DOC.

4

>(a) Commitment to custody of Bureau of Prisons. – A person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of Section 3624.
>
>(b) Place of imprisonment. – The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be suitable . . . .

18 U.S.C. § 3621. Under this statute, the BOP has considerable discretion in selecting a facility for service of a term of imprisonment. *See* 18 U.S.C. § 3621(b) ("The Bureau may designate any available penal or correctional facility . . . "). The BOP's authority is made explicit - - and the effect of such a placement is clearly stated - - in subsections (c) and (e) of Section 3624 of Title 18, United States Code, which provide as follows:

>(c) Pre-release custody. – <u>The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.</u> The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the

|   |   |
|---|---|
| 1 | extent practicable, offer assistance to a prisoner during such |
| 2 | pre-release custody. . . . |
| 3 | (e) Supervision after release. – A prisoner whose sentence includes |
| 4 | a term of supervised release after imprisonment shall be released by |
| 5 | the Bureau of Prisons to the supervision of a probation officer who |
| 6 | shall, during the term imposed, supervise the person released to the |
| 7 | degree warranted by the conditions specified by the sentencing |
| 8 | court. <u>The term of supervised release commences on the day the</u> |
| 9 | <u>person is released from imprisonment</u>. |

18 U.S.C. § 3624 (emphasis added).

Here, pursuant to 18 U.S.C. § 3624(c) Regen was transferred to Vinewood, a community corrections center contracted to the BOP. As set forth in the first sentence of that section, this confinement was the pre-release component of Regen's term of imprisonment. It was not a part of his supervised release.

This conclusion may seem at odds with *Sullivan*, which noted that "the features and goals of Pre-Release Centers in Montana . . . are different from imprisonment and instead are much more similar to those of federal supervised release." The *Sullivan* decision went on to quote the Supreme Court: "Supervised release fulfills rehabilitative ends, distinct from those served by incarceration . . . [T]he primary goal (of supervised release) is to ease the defendant's transition into the community . . .." *Sullivan*, 504 F.3d at 972 (citing *United States v. Johnson*, 529 U.S. 53, 69 (2000)). But although Regen's confinement at Vinewood was in part designed to accomplish such a transition, he was not on supervised release while he was there. Although it is true that pre-release programs and supervised release share the same goals of easing a prisoner's re-entry into the community, pre-release programs occur within the

confines of "imprisonment" under 18 U.S.C. § 3624(a) and (c) *before* "release" under 18 U.S.C. § 3621(e). The next section of this order explains why.

**2.      *Sullivan* and Other Decisions**

In *Sullivan*, the defendant had been serving a federal sentence concurrently with two Montana state sentences and (although it is not clear from the opinion) he apparently had completed his federal sentence of imprisonment before completing his state sentences.[3] In any event, Sullivan was transferred from a *state prison* to a *state pre-release center*, where he spent approximately six months. After he was released from the Montana pre-release center he failed a drug test and was sentenced to 12 additional months in federal prison for having violated supervised release. On appeal he challenged the district court's jurisdiction, arguing that his custody in the state pre-release center should be included as part of his federal supervised release, and therefore that the term of such release had expired. In determining when Sullivan's federal supervised release began, the Ninth Circuit focused on whether Sullivan's detention in the Montana Pre-release Center was "imprisonment" under 18 U.S.C. § 3624(e). That section provides that "[t]he term of supervised release commences on the day the person is released from imprisonment . . . ." *Sullivan* did not consider the applicability of 18 U.S.C. § 3624(c) because Sullivan was in a state, not federal, pre-release program.

What compels the conclusion here that Regen's confinement in Vinewood was still part of his term of federal imprisonment is that, unlike in *Sullivan*, it was a form of detention that *was* "subject to the control of the Bureau of Prisons . . .." (*Sullivan* at 971). Indeed, had Regen violated any of the conditions of the program at Vinewood, the BOP could have exercised its discretion to transfer

---

[3] In his appellate brief Sullivan stated that, after discharging his federal sentence, he was released on *state* parole. Opening Brief of Defendant-Appellant at 3, *United States v. Sullivan*, 504 F.3d 969 (9th Cir. 2007) (No. 06-30546).

1 him back to a traditional prison setting at any time so long as it made an
2 individualized placement assessment pursuant to 18 U.S.C. § 3621(b). *See*
3 *Rivera v. Clark*, No. C 07-2420 CW, slip op., 2008 WL 340653 at *5 (N.D. Cal.
4 Feb. 5, 2008). In contrast, a person on supervision who violates a condition of
5 supervision answers to the probation office and to the sentencing court. *See* 18
6 U.S.C. § 3583(e); Fed. R. Crim. P. 32.1. As Judge Wilken aptly explained in
7 *Rivera*,

> *Sullivan*'s holding is limited to the set of facts at issue there.
> Whatever the meaning of the term, "imprisonment" in § 3624(e), §
> 3624(c) clearly contemplates that when an inmate is transferred
> from a federal prison to a federal RRC, he or she remains
> "imprisoned" in all respects relevant here - - the statute provides
> that an inmate should spend a reasonable portion of the last ten
> percent of his or her "term of imprisonment" in a setting such as an
> RCC. If a particular inmate was sentenced to a term of supervised
> release in addition to a term of imprisonment, the term of
> supervised release would commence after he or she was released
> from the RCC. If *Sullivan* were to compel the conclusion that such
> an inmate began his or her term of supervised release upon transfer
> to the RCC, the inmate would never complete his or her term of
> imprisonment.
>
> Moreover, *Sullivan* focused on the fact that, while at the Montana
> pre-release center, the defendant was not "not subject to the control
> of the Bureau of Prisons." *Id.* at 971. Here, in contrast, the BOP
> would maintain control over Petitioner even after she was
> transferred to an RCC; the agency could exercise its discretion to
> transfer her back to a traditional prison setting at any time, assuming it considered

1   *Rivera*, 2008 WL 340653 at *5.

2         In *United States v. Miller*, a case almost identical to this one, the court
3   reached the same conclusion as I do. There, the defendant moved to dismiss a
4   revocation petition on the basis that the court lacked jurisdiction because the
5   term of supervised release had expired. *United States v. Miller*, slip op., 2007
6   WL 4261929 at *1 (D. Idaho, Nov. 30, 2007). Defendant's motion was premised
7   on his contention that supervised release began when he was placed in
8   pre-release custody by the Bureau of Prisons, not when he was released from
9   that program. *Id.* In a carefully written opinion, Judge Winmill correctly
10  explained that,

> *Sullivan*'s holding is applicable only to substantially similar factual
> circumstances; i.e., where an individual has completed his federal
> sentence but is still serving a concurrent state sentence and is sent to
> a state pre-release center. Here, Defendant was placed in pre-release
> custody at the end of his federal sentence. This is a crucial
> distinction given that § 3624(c) dictates that the Bureau of Prisons
> provide a pre-release component where practicable and specifically
> provides that the pre-release component is part of the term of
> imprisonment. *Sullivan*, on the other hand, necessarily did not
> consider § 3624(e) in the context of § 3624(c) because the
> defendant was not in a federal pre-release program.
>
> As further indication that *Sullivan* is not controlling here, the cases
> cited therein for the proposition that community confinement is not
> imprisonment were decided in totally different contexts, none of

|    |    |
|----|----|
| 1  | which involved the issue of whether the pre-release component at |
| 2  | the end of a federal sentence constituted "imprisonment."[4] |
| 3  | *Id.* at *3. |
| 4  | Judge Winmill went on to point out that |
| 5  | Reading § 3621 and § 3624(a), (c), and (e) together, leads to the |
| 6  | conclusion that a pre-release program provided by the Bureau of |
| 7  | Prisons is part of Defendant's term of imprisonment, and supervised |
| 8  | release does not commence until release from that program. For |
| 9  | example, . . . Section 3621 provides that a person is committed to |
| 10 | the custody of the Bureau of Prisons until the expiration of the term |
| 11 | imposed or until earlier release for satisfactory behavior. If an |
| 12 | inmate's placement in a pre-release program does not constitute |
| 13 | 'imprisonment,' then the Bureau of Prisons would not be permitted |
| 14 | to make such a placement during the term of imprisonment ordered |
| 15 | by the Court - - as occurred here - - yet, § 3624(c) not only permits |
| 16 | such a placement, but mandates it. |
| 17 | * * * |
| 18 | The above clearly indicates to the Court that the pre-release |
| 19 | program is part of the term of imprisonment and not a part of |

---

[4] Judge Winmill cited several cases. As he pointed out, for example, *Reno v. Koray*, 515 U.S. 50 (1995) merely construed 18 U.S.C. § 3585(b) concerning credit for prior custody, and determined that a defendant's pre-sentencing confinement in a community treatment center while released on bail could not be credited toward the sentence imposed because it did not constitute "official detention." *See also Tanner v. Sivley*, 76 F.3d 302 (9th Cir. 1996) (finding that the dispositive issue was whether defendant was under the control of the BOP during confinement at the community treatment center). In *United States v. Latimer*, 991 F.2d 1509 (9th Cir. 1993), the Ninth Circuit found that confinement in a community treatment center was not "incarceration" within the meaning of the Sentencing Guidelines; it did not construe the statutes applicable here.

10

   supervised release. Without a doubt, pre-release programs and supervised release share the same goals of easing a prisoner's re-entry into the community. However, the former occur within the confines of 'imprisonment.' Indeed, were the prisoner to violate any of the conditions of the program, he would answer to the Bureau of Prisons since he is still in their custody. On the other hand, an individual on supervision who violates a condition of supervision answers to the probation office and to the sentencing court.

*Id.* at *4.

  18 U.S.C. § 3621(a) requires a defendant to remain in BOP custody "until the expiration of the term imposed." Here, if the BOP released Regen from imprisonment when it transferred him to Vinewood on May 12, 2004, then the BOP would have violated that section by releasing him after he had served only 46 months of his 52-month aggregate sentence. Likewise, if the BOP had released Regen from imprisonment when it transferred him to Vinewood on May 12, 2007, it would have failed to carry out what this Court clearly contemplated when it imposed the sentence: that Regan would serve a term of imprisonment beyond the 46-month term of imprisonment Judge Carter had imposed.

  For all these reasons, Regen's term of supervision commenced when he was released from BOP custody upon the conclusion of his confinement at Vinewood, i.e., November 5, 2004, not when the BOP transferred him to Vinewood on May 12, 2004. Accordingly, Regen's three-year term of supervised release did not expire until midnight, November 4, 2007. Therefore, the October 12, 2007 summons, which was based on the allegations in the instant Petition for Revocation executed under penalty of perjury on October 4, 2007, was issued before the expiration of Regen's term of supervision.

**CONCLUSION**

For the reasons discussed above, this Court has jurisdiction to adjudicate the petition. Accordingly, Regen's Motion to Terminate Supervision for Lack of Jurisdiction is DENIED.

IT IS SO ORDERED.

DATED:   March 14, 2008

_____
A. HOWARD MATZ
United States District Judge

# NOTICE PARTY SERVICE LIST

**Case No.** _____  **Case Title** _____

**Title of Document** _____

| | | | | |
|---|---|---|---|---|
| | Atty Sttlmnt Officer Panel Coordinator | | | US Attorneys Office - Civil Division -L.A. |
| | BAP (Bankruptcy Appellate Panel) | | | US Attorneys Office - Civil Division - S.A. |
| | Beck, Michael J (Clerk, MDL Panel) | | | US Attorneys Office - Criminal Division -L.A. |
| | BOP (Bureau of Prisons) | | | US Attorneys Office - Criminal Division -S.A. |
| | CA St Pub Defender (Calif. State PD) | | | US Bankruptcy Court |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | | | US Marshal Service - Los Angeles (USMLA) |
| | Case Asgmt Admin (Case Assignment Administrator) | | | US Marshal Service - Riverside (USMED) |
| | Catterson, Cathy (9th Circuit Court of Appeal) | | | US Marshal Service -Santa Ana (USMSA) |
| | Chief Deputy Admin | | | US Probation Office (USPO) |
| | Chief Deputy Ops | | | US Trustee's Office |
| | Clerk of Court | | | Warden, San Quentin State Prison, CA |
| | Death Penalty H/C (Law Clerks) | | | |
| | Dep In Chg E Div | | | |
| | Dep In Chg So Div | | | |
| | Federal Public Defender | | | |
| | Fiscal Section | | | |
| | Intake Section, Criminal LA | | | |
| | Intake Section, Criminal SA | | | |
| | Intake Supervisor, Civil | | | |
| | PIA Clerk - Los Angeles (PIALA) | | | |
| | PIA Clerk - Riverside (PIAED) | | | |
| | PIA Clerk - Santa Ana (PIASA) | | | |
| | PSA - Los Angeles (PSALA) | | | |
| | PSA - Riverside (PSAED) | | | |
| | PSA - Santa Ana (PSASA) | | | |
| | Schnack, Randall (CJA Supervising Attorney) | | | |
| | Statistics Clerk | | | |

| | |
|---|---|
| | ***ADD NEW NOTICE PARTY*** **(if sending by fax, mailing address must also be provided)** |

Name:

Firm:

Address (*include suite or floor*):

*E-mail:

*Fax No.:

* For CIVIL cases only

| |
|---|
| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
| |
| |
| |
| |

**Initials of Deputy Clerk** _____

G-75  (03/07)                    **NOTICE PARTY SERVICE LIST**